IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIM. NO. 09-512 |
| | : | |
| RAHMMAR SELF and | : | |
| HAZIZ SELF | : | |

**Diamond, J.** December 30, 2009

## MEMORANDUM

On July 29, 2009, the grand jury charged siblings Rahmmar Self and Haziz Self with drug-related offenses. The same four-person law firm – Lacheen Wittels & Greenberg L.L.P. – entered its appearance for both men: H. Self retained Mark Greenberg; R. Self retained Barnaby Wittels. On November 6, 2009, I granted Mr. Wittels' Motion to Withdraw after he stated that these circumstances created an incurable potential conflict of interest. The Government contends that this same conflict also requires Mr. Greenberg's disqualification. I agree.

**I.  Background**

  A.  The Charges Against Defendants

The grand jury charged brothers R. Self and H. Self with distribution and aiding and abetting the distribution of five grams or more of crack cocaine, as well as distribution of cocaine base within 1,000 feet of a public housing facility. See 21 U.S.C. § 841(a)(1); 21 U.S.C. § 860(a); *Doc. No. 1*. Those charges stem from the same alleged March 4, 2009 incident. On September 9, 2009, R. Self was charged by superseding indictment with two additional counts of distribution of crack cocaine, two additional counts of distribution of cocaine base within 1,000

1

feet of a public housing facility, and one count of possession of a firearm in furtherance of a drug trafficking crime. See 18 U.S.C. § 924(c)(1); *Doc. No. 27.* These new charges stem from incidents that allegedly occurred at the same public housing facility on July 27 and August 4, 2009. *(Id.)*

Court-appointed counsel entered her appearance for H. Self on August 10, 2009. On September 10, 2009, Mr. Greenberg, who had been retained by H. Self, entered his appearance, thus replacing court-appointed counsel. Mr. Wittels, whom R. Self retained, also entered his appearance on September 10, 2009.

  B. <u>The Conflict of Interest is First Raised</u>

On September 21, 2009, the prosecutor assigned to this matter raised the potential conflict of interest created by the same firm representing both Defendants. *(Doc. Nos. 33, 34.)* The next day, Magistrate Judge Elizabeth Hey conducted a colloquy in accordance with Fed. R. Crim. P. 44(c). *(Doc. No. 35.)* Unfortunately, the assigned prosecutor was unable to attend, and a substitute prosecutor – who apparently knew nothing about the case – represented the Government. *(Tr. at 2.)*

Mr. Wittels and Mr. Greenberg assured Judge Hey that they had discussed the conflict of interest with their clients "before even discussing the facts of this case," and that both Defendants were prepared to waive their right to separate counsel. *(Tr. at 5.)*

> Judge Hey: And I'll ask you both, in your opinions, based on the knowledge that you have about the case thus far, and about any defenses to the case, whether there are any actual conflicts that are likely to arise in the joint representation?
>
> Mr. Wittels: No, your Honor, I don't see any.

2

> Judge Hey: All right.
>
> Mr. Greenberg: No, your Honor, I don't see any either.
> *(Tr. at 5.)*

Judge Hey then explained to each Defendant the extremely serious charges he faced – carrying mandatory minimum terms of ten years up to a maximum of life imprisonment – and his right to conflict-free counsel. *(Tr. at 5.)* She also explained how the interests of each Defendant might diverge from those of his co-Defendant and how conflict-free counsel was essential to protect those interests. *(Tr. at 8, 14.)* R. Self and H. Self each waived his right to conflict-free counsel and stated that he wished to continue with the lawyer he had retained. *(Tr. at 9-10, 15-16.)*

### C. The Conflict Issue is Raised Again

After the case was assigned to Judge John Padova, the Parties filed a series of pre-trial motions. Notably, Mr. Greenberg filed a Motion to Sever on behalf of H. Self, arguing that trial on the additional charges brought only against R. Self would prejudice H. Self. *(Doc. No. 52.)* Mr. Wittels did not respond to that Motion; rather, he filed a "Consent Motion to Postpone Trial," stating that Mr. Greenberg had advised him "that he takes no position with regard to undersigned counsel's Motion." *(Doc. No. 54 at 2.)*

On October 21, 2009, Judge Padova held a hearing to consider pending motions. *(Doc. No. 71.)* Troubled by the potential conflict, Judge Padova sought again to question Defendants and their lawyers. To preclude the disclosure of privileged communications or strategies, Judge Padova colloquied each Defendant with only his own lawyer present (thus excluding the assigned prosecutor, and the co-Defendant and his counsel.) During the colloquy of R. Self – who has a tenth-grade

3

education – Mr. Wittels reiterated that both he and his client saw no conflict: "[R. Self] doesn't think there's a conflict, he doesn't perceive a conflict, he's happy with my representation." *(Tr. at 6,7.)* Judge Padova conducted an extensive colloquy, explaining the right to conflict-free counsel and the importance of counsel's undivided loyalty. Among the issues Judge Padova addressed was the need for each lawyer to keep strategies, information, and the like absolutely confidential if it was in his client's best interest to do so. At the colloquy's conclusion, R. Self waived any conflict of interest. *(Tr. at 15.)*

Judge Padova then conducted a similar colloquy with H. Self, who has a high school education. *(Tr. at 22.)* Unlike his brother, H. Self expressed concerns about the joint representation, asking Judge Padova to describe further how a conflict of interest could manifest itself. *(Tr. at 27.)* After offering such a description, Judge Padova granted H. Self's request for a recess. *(Tr. at 30.)* H. Self spoke with Mr. Greenberg for 20 minutes and then returned to the courtroom and waived any conflict. *(Tr. at 30.)*

### D. Mr. Wittels' Motion to Withdraw

On October 23, 2009, two days after the hearing at which he denied the existence of a conflict, Mr. Wittels moved to withdraw on conflict grounds. *(Doc. No. 70.)* Contrary to what he told Judge Padova and Judge Hey, Mr. Wittels acknowledged his inability to keep information confidential from Mr. Greenberg: "After reflection it is apparent to undersigned counsel that no workable protocol can be created that will satisfy the court's concerns and that no workable 'Chinese Wall' could be erected in what is a four lawyer firm in which the offices of counsel in this case are adjacent to one another and in which there is a common receptionist." *(Id. at 1-2.)* Mr. Wittels also noted that his client was without funds to retain another lawyer. *(Id. at 2.)*

4

The case was reassigned to me on November 2, 2009. *(Doc. No. 72.)* On November 6, 2009, I held a hearing to consider the Motion to Withdraw. *(Doc. No. 76.)* Mr. Wittels acknowledged that "it's very unusual for two lawyers in one firm to represent co-Defendants in a federal case." *(Tr. at 2.)* He said that after the October 21st hearing before Judge Padova, he again considered the impracticability of maintaining client confidences and the feasibility of his firm's ongoing representation of the Self brothers. After discussing the matter with his client, Mr. Wittels

> decided it's in [his client's] best interest if I withdraw . . . [The ongoing joint representation] would create a situation in which it would only damage the attorneys and my client. The potential for problems is just too great.
> *(Tr. at 3-4.)*

R. Self confirmed that "it's in [his] best interest that [Mr. Wittels] resign," said that he could not afford to retain another lawyer, and asked me to appoint counsel to replace Mr. Wittels. *(Tr. at 5.)*

After granting the Motion to Withdraw, I asked whether the conflict Mr. Wittels acknowledged also warranted the Lacheen firm's disqualification. *(Tr. at 5.)* Mr. Greenberg vehemently argued against his disqualification. *(Tr. at 6.)* H. Self stated that he wanted Mr. Greenberg to continue as his counsel, that he would waive any conflict, and that he could not afford to retain another lawyer. *(Tr. at 8-11.)* The prosecutor assigned to this matter – who had not attended the hearing before Judge Hey and was not in the courtroom when Judge Padova had colloquied each Defendant and his lawyer – argued that I should disqualify Mr. Greenberg because "there are naturally conflicting defense(s) that could be presented." *(Tr. at 13.)*

I ordered the Parties to brief the issue of Mr. Greenberg's disqualification and took the matter under advisement. I then considered motions to continue trial that had been filed by Mr. Wittels on behalf of R. Self and by the Government. *(Doc. Nos. 54, 74.)* Mr. Greenberg vigorously opposed

5

the Government's Motion, urging that "Mr. Haziz Self is ready to go to trial and we're prepared to go to trial." *(Tr. at 17.)* Mr. Wittels contended in his Motion that R. Self needed a continuance to prepare a trial defense. *(Doc. No. 54.)* Remarkably, Mr. Greenberg told me that he did not oppose R. Self's continuance motion. *(Tr. at 17.)* As I concluded the hearing, I noted that in taking these contradictory positions, Mr. Greenberg appeared to confirm the Government's concern that he would not act in the best interest of his firm's existing client if that action might harm his firm's former client. *(Tr. at 18.)*

I subsequently appointed Howard Popper, of the firm of Popper and Yatvin, to represent R. Self. *(Doc. No. 82.)*

## II. Legal Standards

Where two or more defendants have been charged jointly and are represented by the same counsel or by lawyers from the same firm, the district court "must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court *must* take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c) (emphasis added). The Pennsylvania Rules of Professional Conduct provide that "[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline [the representation]." See Pa. Rules Prof'l Conduct R. 1.7 cmt. 23 (2005).

The Supreme Court has held that a defendant's Sixth Amendment right to counsel of his choice must give way when a conflict or a potential conflict arises:

> The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.
> <u>Wheat v. United States</u>, 486 U.S. 153, 164 (1988))

The district court is not bound to accept counsel's statement that no conflict exists, or to accept a defendant's conflict waiver. <u>Wheat</u>, 486 U.S. at 160; <u>see also</u> <u>United States v. Joyce</u>, 257 Fed. Appx. 501, 505 (3d Cir. 2007). Even when a defendant waives all potential conflicts, the district court "may nevertheless disqualify counsel if it concludes a serious conflict is likely to arise during the proceedings." <u>Joyce</u>, 257 Fed. Appx. at 505.

The Third Circuit has cautioned that the potential for conflict is heightened where defendants have a close relationship. <u>See id.</u> (because co-defendants were in a romantic relationship, district court was correctly concerned that "trial strategy and plea negotiations could be hindered by a joint representation.") Where – as here – co-defendants are family members, they may not be "acting out of self-interest in choosing joint representation, but rather out of an interest to protect the family as a unit." <u>United States v. Cooper</u>, 672 F. Supp. 155, 159 (D. Del. 1987). Accordingly, a conflict waiver from a co-defendant family member may be suspect, particularly where the joint defendants' best defense is to implicate one another. <u>See id.</u> at 158.

The law makes no distinction between one lawyer or multiple lawyers from the same law firm representing co-defendants. <u>See</u> Pa. Rules of Prof'l Conduct R. 1.10 cmt. 2 ("[A] firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client."). If the co-defendants' counsel are members of the same law firm, "it [is] entirely reasonable to conclude

7

that the counsel's sharing of work space and staff present[s] an unacceptable risk of inadvertent breaches of attorney-client confidentiality." Joyce, 257 Fed. App'x at 505.

Where lawyers from the same firm are representing co-defendants, a district court has the discretion to remedy the conflict of interest by measures it deems appropriate. See United States v. Flanagan, 679 F.2d 1072, 1076 (3d Cir. 1982), rev'd on other grounds, 465 U.S. 259 (1984) ("[D]isqualification of defense counsel and ordering defendants to retain separate counsel are appropriate measures to be taken pursuant to Fed. R. Crim. P. 44(c)."). In some cases it may be appropriate to allow one of the firm's lawyers to represent one of the defendants. See, e.g., United States v. Joyce, 330 F. Supp. 2d 527 (E.D. Pa. 2004) (disqualifying one lawyer from the firm but allowing the other to continue his representation). The lawyer who remains in the case, however, still faces potential conflicts: (1) he or she may possess confidential information helpful to the existing client but detrimental to the former client; or (2) the interests of the existing client may otherwise be adverse to the interests of the firm's former client. See Pa. Rules Prof'l Conduct R. 1.10 ("[A] firm may not knowingly represent a person in the same or a substantially related matter [in which a firm lawyer] had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired [confidential] information."). Thus, disqualification of the law firm itself may be required to ensure effective representation. See Flanagan, 679 F.2d at 1076 ("The potential for conflict arising from the firm's receipt of confidential information from all the defendants, and its obligations in defending just one of the defendants, perhaps at the expense of the others, is obvious. [C]omplete disqualification . . . is one of the measures committed to the district court's discretion by Rule 44(c).").

## III. Discussion

Mr. Greenberg appears to believe that any conflict or potential conflict of interest was eliminated by his law partner's withdrawal. I have grave concerns about the conflicts Mr. Greenberg continues to face, however, even if he does not. The Pennsylvania Rules of Professional Conduct provide that a lawyer faces a conflict of interest where "there is a significant risk that the representation . . . will be materially limited by the lawyer's responsibilities to . . . a former client." See Pa. Rules of Prof'l Conduct 1.7. It is apparent that Mr. Greenberg's responsibilities to R. Self – his firm's former client – will likely compromise his representation of H. Self.

In seeking to withdraw, Mr. Wittels described the importance of providing separate and independent defenses to the Self brothers and the practical impossibility of creating an ethics wall in the circumstances presented: a firm whose four lawyers have adjacent offices and a common secretary. *See Doc. No. 70.* Moreover, the particular circumstances of each Defendant are not the same. Mr. Greenberg argued in his Motion to Sever that the additional charges against R. Self could unfairly taint the jury's consideration of H. Self. *See Doc. No. 52.* In such circumstances (particularly if I refuse to sever the additional charges), various defenses might well serve H. Self even though they could harm R. Self. Nor would it be unusual for the putatively less culpable H. Self to cooperate against his putatively more culpable co-Defendant. See, e.g., United States v. Isaza-Zapata, 148 F.3d 236 (3d Cir. 1998). These stratagems may not be available to H. Self, however, if Mr. Greenberg retains any loyalty to his firm's former client, R. Self.

H. Self appeared to understand these possibilities when he asked Judge Padova to describe how a conflict could manifest itself and then asked the Judge for a recess. *(Tr. at 30.)* Only after spending twenty minutes with Mr. Greenberg did H. Self agree to waive any conflict. *(Tr. at 32.)*

9

Having conducted a hearing in this matter, I am not satisfied that H. Self – who has only a high school education – understands how Mr. Greenberg's potential conflict could seriously compromise his defense. *(Tr. at 8-10.)*

Nor do I find credible Mr. Greenberg's assurances during the November 6th hearing that he will represent H. Self zealously. *(Tr. at 6.)* After providing me with those assurances, Mr. Greenberg took contradictory positions with respect to the continuance motions filed by the Government and R. Self. *(Tr. at 16.)* Having urged that it was in H. Self's best interests to go to trial immediately, Mr. Greenberg was nonetheless prepared to compromise those interests by agreeing to the continuance request made by his firm's former client. This is but one example of the choices respecting his firm's present and former clients that will confront Mr. Greenberg if I allow him to continue in this case.

Mr. Greenberg's arguments against his disqualification are, to put it kindly, unpersuasive. For instance, he argues that the assigned prosecutor attended the September 22nd hearing before Judge Hey, but improperly delayed seeking the Lacheen firm's disqualification until the November 6th hearing before me. <u>See</u> *Doc. No. 90 at 8-9.* Unfortunately, Mr. Greenberg has not accurately set out what occurred. As I have described, although the assigned prosecutor raised the conflict within days of Messrs. Greenberg and Wittels entering their appearances, the record shows that because she was unable to attend the September 22nd hearing, another Government lawyer who knew nothing about the case filled in. Moreover, as I have described, because Judge Padova questioned each Defendant and his lawyer privately on October 21st, the assigned prosecutor did not witness either colloquy. Most significantly, it was not until November 6th that: (1) Mr. Wittels – who had vigorously denied the existence of any potential conflict – first acknowledged and described in detail

an incurable conflict compelling him to withdraw; and (2) Mr. Greenberg vividly demonstrated his divided loyalties when he agreed to R. Self's motion to continue, but opposed the Government's continuance request. In these circumstances, the prosecutor acted appropriately: she sought disqualification of the Lacheen firm as soon as the true nature of the conflict became apparent.

Mr. Greenberg also argues that Mr. Popper – R. Self's newly-appointed counsel – "has conducted an independent investigation of the conflict issue and has concluded that one does not exist . . ." *(Doc No. 90 at 7-8.)* Once again, this is not accurate. Mr. Popper conducted no "independent investigation," and has offered no "conclusion" regarding the existence of a conflict. Rather, in his "Statement of Counsel," Mr. Popper notes that after familiarizing himself with the case – speaking with Mr. Wittels and the assigned prosecutor – he met with his client, R. Self, who "does not object to the Lacheen firm" remaining in this case. *(Doc. No. 88.)* This is hardly a ringing endorsement of Mr. Greenberg's position. In any event, I do not find R. Self's apparent acquiescence persuasive. R. Self has a tenth-grade education. Having questioned him on November 6th and having reviewed the earlier colloquies, I do not believe R. Self fully understands the serious conflict presented here. Accordingly, his apparent willingness to waive that conflict is not dispositive. Joyce, 257 Fed. Appx. at 505.

Finally, Mr. Greenberg argues that H. Self can no longer

> husband his resources and retain other counsel. Rather, defendant relied on Judge Hey's decision, relied on the Government's agreement to Judge Hey's decision, and proceeded with Greenberg as counsel. [H.] Self has told the Court that he has no resources to hire new counsel. Although the Court could appoint "Clarence Darrow" to represent Self, this is not the attorney the defendant wants as counsel.
> *Doc. No. 90 at 10.*

11

As I have discussed, any delay in the disqualification of the Lacheen firm is due to the actions of the firm itself. Had either Mr. Wittels or Mr. Greenberg immediately acknowledged the painfully obvious potential conflict described by Mr. Wittels in his Motion to Withdraw, the Lacheen firm would never have attempted to represent both Self brothers.

In sum, Mr. Greenberg's continued presence in this case presents a minefield of potential problems that would compel me constantly to evaluate whether he is acting in the best interest of his firm's existing client or in his firm's former client. In these circumstances, because I am unable to find "good cause to believe that no conflict of interest is likely to arise," I "must take appropriate measures to protect [H. Self's] right to counsel." Fed. R. Crim. P. 44(c). Whether the lawyer I appoint to replace Mr. Greenberg is or is not a "Clarence Darrow," he or she will not be burdened by divided loyalties.

### IV. Conclusion

I will grant the Government's request to disqualify Mr. Greenberg and will appoint new counsel to represent Defendant Haziz Self.

An appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*

_____

**Paul S. Diamond, J.**